1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9  RICHARD DUNHAM,                          )
                                           )
10           Petitioner,                    )          3:05-cv-00183-LRH-RAM
                                           )
11  vs.                                     )
                                           )          **ORDER**
12  JACKIE CRAWFORD, *et al.*,              )
                                           )
13           Respondents.                   )
   _____/

14

15        This action is a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254,

16  by Richard Dunham, a Nevada prisoner.  This action comes to the Court with respect to its merits.

17  **I.     Procedural History**

18        Petitioner is incarcerated pursuant to a judgment of conviction entered February 26, 1993,

19  following an *Alford* plea, in Nevada's Second Judicial District Court.  (Exhibits 23, 24, and 27).[1]

20  Petitioner was convicted of one count of sexual assault.   (*Id.*).  Petitioner was sentenced to life with

21  the possibility of parole.  (Exhibit 27).

22        Petitioner did not file a direct appeal with the Nevada Supreme Court.  (Petition, at Docket

23  #6,  item 3).  However, on September 21, 2000, petitioner filed a Petition for Writ of Mandamus and

24  Prohibition with the state district court.  (Exhibit 29).  The petition concerned a parole hearing held

25  on May 30, 2000.  (*Id.*, at 2).  Petitioner claimed that the Nevada Board of Parole Commissioners

26  increased his sentence from life with the possibility of parole after 5 years, to life with the possibility

27  _____

28        [1]  The numbered exhibits referred to in this Order were filed by respondents and are located in
   the record at Docket #10 and Docket #18.

of parole after 10 years had been served.  Petitioner alleged the Parole Board did so by changing his crime severity level on the parole likelihood success factor worksheet.  (*Id.*).  Following appointment of counsel, a supplemental petition, and a hearing, the court denied the petition on May 3, 2004.  (Exhibits 29, 34, 35, and 52).  Petitioner appealed, and on October 6, 2004, the Nevada Supreme Court affirmed the denial, but remanded for the state district court to enter an amended judgment specifically setting forth petitioner's parole eligibility after 10 years and including the applicable provision of NRS 200.366, under which petitioner was convicted.  (Exhibit 66).  Remittitur issued on November 2, 2004.  (Exhibit 67).

On December 13, 2004, the state district court filed the amended judgment of conviction. (Exhibit 69).  The judgment was amended to contain a clause that petitioner's sentence was life with the possibility of parole after a minimum of 10 years had been served and included reference to NRS 200.366.  (*Id.*).

On March 28, 2005, this Court received petitioner's *pro se* petition for writ of habeas corpus, initiating this action.  (Docket #1).  That petition was filed on April 22, 2005, after petitioner paid the filing fee.  (Docket #5 and #6).

Respondents filed a motion to dismiss the petition on June 24, 2005, contending that petitioner has not exhausted his claims in state court.  (Docket #10).   Petitioner filed a motion for a stay on August 16, 2005, seeking permission to return to state court to exhaust all of his unexhausted claims.  (Docket #13).

By order filed November 22, 2005, this Court entered an order granting, in part, respondents' motion to dismiss and denying petitioner's motion for a stay.  (Docket #17).  This Court determined that petitioner failed to exhaust the Double Jeopardy claim in Ground 1, the Equal Protection claim in Ground 2, and Ground 3 in its entirety.  (*Id.*).  Petitioner was given the election to either voluntarily abandon the unexhausted grounds and proceed on the remaining grounds, or allow the Court to dismiss his petition without prejudice.  (*Id.*).

In response to the Court's order, petitioner filed a notice indicating his abandonment of Ground 1, as to the Double Jeopardy claim; Ground 2, as to the Equal Protection claim; and Ground 3 in its entirety.  (Docket #19).

1    By order filed December 27, 2005, this Court directed respondents to file an answer

2    addressing the surviving grounds of the petition.  (Docket #20).  The Court granted petitioner thirty

3    days thereafter to file a reply brief.  (*Id.*).

4    On February 2, 2006, petitioner filed a motion to amend his federal habeas petition.  (Docket

5    #21).  Respondents' opposed the motion, and petitioner replied.  (Docket #24, Docket #26).

6    Respondents filed an answer on March 9, 2006.  (Docket #25).  Petitioner did not file a reply,

7    but instead, on March 22, 2006, filed a "Notice of Failure [of Respondents] to Properly Answer."

8    (Docket #27).  Respondents filed a response to petitioner's notice.  (Docket # 28).

9    On May 11, 2006, this Court denied petitioner's motion to amend his petition (Docket #21)

10    and granted petitioner yet another 30 days in which to file a reply to respondents' answer.  (Order, at

11    Docket #29).  Petitioner failed to file a reply.

12    With respect to petitioner's  March 22, 2006, "Notice of Failure [of Respondents] to Properly

13    Answer" (Docket #27), petitioner states his opinion that respondents improperly responded to the

14    original petition, when they should have responded to the proposed amended petition.  (Docket #27).

15    Petitioner attached the proposed amended petition to his motion to amend, in accordance with Local

16    Rule 15-1(a).  The amended petition was not filed independent of the motion to amend.  This Court

17    has denied petitioner's motion to amend the petition, and as such, the amended petition was never

18    filed as an independent document.  (*See* Order, at Docket #29).  In the same order denying the

19    motion to amend, this Court specifically granted petitioner a second opportunity to file a reply to the

20    answer.  (*Id.*).  Petitioner has failed to do so.  The Court does not deem petitioner's "notice" (Docket

21    #27) to be a reply in accordance with Rule 5(e) of the Rules Governing § 2254 Cases.

22    **II.    Petitioner's Motion for Appointment of Counsel (Docket #31)**

23    On November 26, 2007, petitioner filed a motion for the appointment of counsel.  (Docket

24    #31).  There is no constitutional right to appointed counsel for a federal habeas corpus proceeding.

25    *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 428 (9th Cir.

26    1993).  The decision to appoint counsel is generally discretionary.  *Chaney v. Lewis*, 801 F.2d 1191,

27    1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th

28    Cir.), *cert. denied*, 469 U.S. 838 (1984).  However, counsel must be appointed if the complexities of

the case are such that denial of counsel would amount to a denial of due process, and where the petitioner is a person of such limited education as to be incapable of fairly presenting his claims. *See Chaney*, 801 F.2d at 1196; *see also Hawkins v. Bennett*, 423 F.2d 948 (8th Cir. 1970). The petition on file in this action is sufficiently clear in presenting the issues that petitioner wishes to bring. Petitioner has successfully prepared and filed documents throughout the litigation of this action. Counsel is not justified in this instance. The motion is denied.

### III.    Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

4

1    principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

2    529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

3    than merely incorrect or erroneous; the state court's application of clearly established federal law

4    must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

5           In determining whether a state court decision is contrary to, or an unreasonable application of

6    federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501

7    U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

8    *denied*, 534 U.S. 944 (2001).

9           Moreover, "a determination of a factual issue made by a State court shall be presumed to be

10   correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

11   clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

12   **IV.    Discussion**

13          **A.  Ground One**

14          In Ground One, petitioner claims constitutional violations of his Fifth Amendment rights

15   under due process, double jeopardy, and the Ex Post Facto Clause.  (Docket #6, at p. 3).  Petitioner

16   has abandoned the double jeopardy claim.  (Docket #19).  The due process and *ex post facto* claims

17   will be discussed.

18                    **1.  Amended Judgment of Conviction**

19          Petitioner alleges that the amended judgment of conviction, filed December 13, 2004,

20   changed his sentence.  (Docket #6, at p. 3(a)).  Petitioner claims that his sentence under the original

21   1993 judgment provided for life with the possibility of parole after 5 years.  Petitioner claims that the

22   amended judgment now provides a sentence of life with the possibility of parole after a minimum of

23   10 years had been served.  (*Id.*).  Petitioner alleges that the state district court cannot change his

24   sentence twelve years after the original 1993 conviction, without an opportunity for petitioner to

25   offer a defense.  (*Id.*).  Petitioner further alleges that the amended judgment was based on a 1996

26   legislative amendment to NRS 200.366, which increased the minimum penalties for sexual assault.

27          The 1977 version of NRS 200.366, which was in effect in 1988, at the time petitioner

28   committed his crimes, provided as follows:

Any person who commits a sexual assault shall be punished:
(a) If substantial bodily harm to the victim results . . .
(b) If no substantial bodily harm to the victim results:
(1) By imprisonment in the state prison for life, with the possibility of parole, beginning when a minimum of 5 years has been served; or
(2) By imprisonment in the state prison for an definite term of 5 years or more, with eligibility for parole beginning when a minimum of 5 years has been served.
(c ) *If the victim was a child under the age of 14 years, by imprisonment in the state prison for life with possibility of parole, eligibility for which begins when a minimum of 10 years has been served.*

Section 3 of Chapter 598, Statutes of Nevada 1977, 59th Session, at pp. 1626-27 (emphasis added). The 1977 version of NRS 200.366 is the applicable law for petitioner's conviction. The statute was altered in 1991, and again in 1995. Petitioner's claim refers to the 1995 revision, which was not in effect at the time he committed his crime.

When the State charged petitioner with sexual assault pursuant to NRS 200.366, none of the counts specified a section of the statute, however, the details of each count noted the birth date of the victim as May 20, 1977. (Exhibit 2; Exhibit 6). Each count occurred in 1988, when the victim was ten or eleven years of age. (*Id.*). The victim testified at the preliminary hearing that she was eleven years old at the time of the sexual assaults. (Exhibit 25). In 1988, pursuant to NRS 200.366c, when the victim of a sexual assault is a child under the age of 14, the punishment is "life with the possibility of parole, eligibility for which begins when a minimum of 10 years has been served." The appropriate sentence for the state court to impose in the 1993 original judgment was life with the possibility of parole after a minimum of 10 years had been served.

The guilty plea memorandum, signed and acknowledged by petitioner, indicates that petitioner understood that the applicable sentence was life with the possibility of parole after a minimum of 10 years had been served. (Exhibit 23, at p. 3; Exhibit 24). Defense counsel acknowledged that he and his client reviewed and executed the plea memorandum. (Exhibit 24, at p. 7). Significantly, during the change of plea hearing in state district court, the following colloquy occurred between the judge and petitioner:

THE COURT: Have you been advised by your attorney what the possible maximum penalty in this case is?

THE DEFENDANT: Yes.

6

1          THE COURT: And what is that?

2          THE DEFENDANT: Life, with parole in ten years.

3   (Exhibit 24, at p. 5).  At sentencing, the judge pronounced the sentence as follows:

4          It will be the sentence of this Court that $25 administrative assessment
           fee be imposed, that the Department of Parole and Probation's
5          recommendation that you serve a live [sic] term in prison be imposed,
           and that you will not be eligible for parole until 10 years of that term
6          has been served at a minimum. [Restitution portion omitted].

7   (Exhibit 25, at pp. 5-6).

8          The legislature's amendment of NRS 200.366 in 1995 had no impact on petitioner's sentence

9   structure.  There was no Ex Post Facto or due process violation, as the sentence that petitioner

10  received was imposed in accordance with the version of the statute as it existed at the time he

11  committed his crime.

12         The Nevada Supreme Court found and held that the minimum term of parole eligibility was

13  10 years, not 5 years:  "The documents before this court indicate that appellant's parole eligibility

14  term, which appears to have been inadvertently left off the judgment of conviction, was a term of ten

15  years and not five years as suggested by appellant."  (Exhibit 66, at p. 3).  The Nevada Supreme

16  Court further held:

17         NRS 176.105, at the time appellant was convicted, required the
           judgment of conviction to include, in pertinent part, "a reference to the
18         statute under which the defendant is sentenced and, if necessary to
           determine eligibility for parole, the applicable provision of the statute."
19         [Footnote 13: See 1989 Nev. Stat., ch. 485, § 1, at 938].  Appellant's
           judgment of conviction failed to specify the parole eligibility term and
20         that failure caused confusion.  Therefore, we direct the district court to
           enter an amended judgment of conviction which specifically sets forth
21         a parole eligibility term of ten years and the applicable provision of
           NRS 200.366 under which appellant was convicted.

22

23  (Exhibit 66, at pp. 4-5).  Thus, the amended judgment of conviction filed December 13, 2004, in

24  accordance with the Supreme Court's partial remand, merely corrected a clerical error, and did not

25  alter petitioner's sentence of life with the possibility of parole after a minimum of 10 years had been

26  served.

27         The Nevada courts' factual findings are entitled to a presumption of correctness.  28 U.S.C. §

28  2254(e)(1).  Petitioner has not shown that the Nevada Supreme Court's rulings were contrary to, or

7

1   involved an unreasonable application of, clearly established federal law, as determined by the United

2   States Supreme Court, or that the decisions were based on an unreasonable determination of facts in

3   light of the evidence presented at the state court proceedings. 28 U.S.C. § 2254(d). The Court will

4   deny habeas relief with respect to petitioner's claim in Ground One that the December 13, 2004,

5   amended judgment changed his sentence and violated his rights.

6                                    **2. Parole Board Consideration**

7         Also in Ground One, petitioner alleges that the parole board more than doubled the length of

8   his sentence from the sentence imposed by the state district court in 1993. (Docket #6, at 3-3(a)).

9   Petitioner alleges that the parole board, at the May 30, 2000 hearing increased his crime severity

10   level to an A3, which provides a recommendation of 240-270 months before the board may

11   recommend parole. (*Id.* at 3(a)). This is based on a minimum ten-year parole eligibility. Petitioner

12   alleges his level should have been at A4, which provides a recommendation of 156-180 months

13   based on a minimum five-year parole eligibility. (*Id.*). Petitioner alleges that the increase was due to

14   new parole guidelines implemented in 1999, and the 1996 Nevada Legislature increasing the penalty

15   for sexual assault pursuant to NR 200.366. (*Id.*).

16         Petitioner alleges that he should have received a crime severity level of A4, based on a

17   sentence of life with the possibility of parole after 5 years. (Docket #6, at p. 3(a)). As discussed in

18   this Order, *supra* at Part IV(A)(1), petitioner was properly sentenced to life with the possibility of

19   parole after 10 years, not 5 years. The crime severity level of A3 was the appropriate rating for a life

20   sentence with a 10 year parole eligibility minimum. Moreover, the assignment of a crime severity

21   level by the parole board is irrelevant because it has no effect on petitioner's sentence. The

22   judgment of conviction determined the sentence, not the parole board. In Nevada, there is no right to

23   parole. NRS 213.10705. Petitioner had no right to parole, as parole is an act of grace by the state,

24   thus there can be no due process violation. *Greenholtz v. Inmates of Nebraska Penal and*

25   *Correctional Complex*, 422 U.S. 1 (1979); *Severance v. Armstrong*, 96 Nev. 836, 839 (1980) (NRS

26   213.1099 does not confer a legitimate expectation of parole release and therefore does not create a

27   constitutionally cognizable liberty interest sufficient to invoke due process).

28         Petitioner also alleges that the 1999 changes to the parole board calculations for crime

severity level violated his rights.  (Docket #6, at p. 3(a)).  This Court does not discern a violation of petitioner's rights under the due process clause or the Ex Post Facto Clause.  In reviewing petitioner's claim, the Nevada Supreme Court found and held:

> Appellant argues that the Parole Board acted beyond its scope of power when it reclassified his crime severity level in the parole likelihood success factor worksheet.  Appellant argues that because the Parole Board originally considered appellant for parole after five years that his term for parole eligibility should be considered to be five years.  Appellant argues that the Parole Board has since determined that his parole eligibility was in actuality ten years.  Appellant argues that this new determination increased his sentence structure and violated his due process rights and constituted an ex post facto violation. [Footnote 2: Appellant appears to argue that the 1995 legislative amendments to NRS 200.266 [sic] that increased the parole eligibility terms for sexual assault caused the Parole Board to increase his parole eligibility term.  See 1995 Nev. Stat., ch. 443, § 58, at 1186-87.  There is no support for this argument.  Appellant has not demonstrated any causal relationship between the 1995 legislative amendments to NRS 200.366 and the Parole Board's determination that appellant's minimum parole eligibility was ten years].

> A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion. [Footnote 3: NRS 34.160; *Round Hill Gen. Imp. Dist. v. Newman*, 97 Nev. 601, 637 P.2d 534 (1981)].  A writ of prohibition is the counterpart of the writ of mandamus. [Footnote 4: NRS 34.320].  It serves to arrest "the proceedings of any . . . board . . . exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such . . . board . . ." [Footnote 5: *Id.*] A writ of mandamus and a writ of prohibition may issue only where there is no plain, speedy, and adequate remedy at law. [Footnote 6: NRS 34.170; NRS 34.300].  Petitions for extraordinary writs are addressed to the sound discretion of the court. [Footnote 7: *State ex rel. Dep't Transp. v. Thompson*, 99 Nev 358, 662 P.2d 1338 (1983)].

> In denying appellant's petition, the district court concluded that "there has been no unconstitutional infringement upon [appellant's] rights as alleged."  Based on our review of the documents presented, we conclude that the district court did not abuse its discretion in denying appellant's petition for extraordinary relief. Parole is an act of grace:  a prisoner has no constitutional right to parole. [Footnote 8: See NRS 213.10705; *Niegarth v. Warden*, 105 Nev. 26, 768 P.2d 882 (1989)].  The documents before this court indicate that appellant's parole eligibility term, which appears to have been inadvertently left off the judgment of conviction, was a term of ten years and not five years as suggested by appellant. [Footnote 9: The fact that appellant appeared before the Parole Board after five years was a mistake made in his favor by the Parole Board.  The documents before this court unequivocally demonstrate that appellant entered a plea with the understanding that he was to serve a minimum of ten years before he was eligible for parole.  1997 Nev. Stat., ch. 598, § 1, at 1627

9

1

2

3

4

5

6

7

8

9

10

(providing for a term of life with the possibility of parole after ten years if the victim of the sexual assault was under the age of fourteen). To the extent that appellant is attempting to challenge the validity of his judgment of conviction and sentence, this challenge is improperly raised in the instant petition for a writ of mandamus and prohibition. *See* NRS 34.724(2)(b); *see also* NRS 34.170; NRS 34.330]. Thus, the Parole Board correctly determined appellant's crime severity level and did not impermissibly increase his sentence structure. The parole board's application of revised parole guidelines did not violate the Ex Post Facto Clause. [Footnote 10: *See generally Vermouth v. Corrothers*, 827 F.2d 599 (9th Cir. 1987) (holding that federal parole guidelines were not laws for ex post facto purposes)]. The subject of parole is within the legislative authority [Footnote 11: *See Pinana v. State*, 76 Nev. 274, 352 P.2d 824, 829 (1960)]. The Parole Board properly applied the amended parole guidelines to appellant. [Footnote 12: See NRS 213.10885(1), (5); NRS 213.1099(2); NAC 213.560(1)]. Appellant failed to demonstrate that a due process violation or the rule of leniency required extraordinary relief. Therefore, we affirm the district court's order denying extraordinary relief.

11   (Exhibit 66, at pp. 2-4).

12          The Nevada courts' factual findings are entitled to a presumption of correctness. 28 U.S.C. §

13   2254(e)(1). Petitioner has not shown that the Nevada Supreme Court's rulings were contrary to, or

14   involved an unreasonable application of, clearly established federal law, as determined by the United

15   States Supreme Court, or that the decisions were based on an unreasonable determination of facts in

16   light of the evidence presented at the state court proceedings. 28 U.S.C. § 2254(d). The Court will

17   deny habeas relief with respect to petitioner's claim in Ground One that the parole board more than

18   doubled the length of his sentence from the sentence imposed by the state district court in 1993 and

19   the parole board calculations for crime severity level violated his rights. Habeas relief is denied as to

20   the entirety of Ground One.

21          **B. Ground Two**

22          In Ground Two, petitioner claims that his constitutional rights to due process, equal

23   protection, and against *ex post facto* laws under the Fourteenth Amendment were violated.

24   Petitioner abandoned his equal protection claim. (Docket #19). The due process and *ex post facto*

25   claims will be discussed.

26          Petitioner alleges that the parole board improperly changed his crime severity level from an

27   A4 (156-180 months) to an A3 (240-270 months), thereby more than doubling his sentence. (Docket

28   #6, at p. 5-5(a)). Petitioner alleges that even under the parole board recommendation of A4, he was

essentially sentenced to 12.5 years (150 months) to life, although he should have only been sentenced to life with the possibility of parole after 5 years.  Under the A4, he alleges that his sentence has been increased from a minimum 5 years to a minimum 20 years (240 months).  (*Id.*). According to petitioner, the problem is the new parole guidelines instituted in 1999, several years after his conviction.  He alleges that the parole board is attempting to force his sentence to reflect the legislature's alteration of NRS 200.366 in 1996, which increased the minimum sentence for sexual assault.  Petitioner argues that, rather than apply the parole board standards under 213.10885 (post-1997), the parole board should have applied NRS 213.10987 (pre-1997).  Petitioner cites several Nevada statutes in support of this contention.  Petitioner alleges that he was denied fair consideration by the parole board due to the increased crime severity level, which is in excess of NRS 200.366, as it existed at the time of the offense.  (*Id.*).

The Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts."  *Miller v. Ignacio*, 112 Nev. 930, 933, 921 P.2d 882, 883 (1996), citing *Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (citation omitted).  The United States Supreme Court has established a two-part test to address *ex post facto* claims.  A law violates the Ex Post Facto Clause if it is (1) retroactive – it applies "to events occurring before its enactment," and (2) detrimental – it "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Cal. Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995); *Himes v. v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003).  "The inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual.  *Weaver,* 450 U.S. at 33; *Nulph v. Faatz*, 27 F.3d 451, 455-56 (9th Cir. 1994).

Changes in the law that are merely procedural will withstand scrutiny, as will statutes that leave unaffected the "crime for which . . . defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt."  *Dobbert v. Florida*, 432 U.S. 282, 294 (1977).  A law does not violate the clause if it "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes."  *Morales*, 514 U.S. at 513.  A change in the law that changes the way a parole board exercises its

1    discretion does not necessarily offend the Ex Post Facto Clause. *Garner v. Jones*, 529 U.S. 244, 253

2    (2000).

3                                    **1. Retroactivity**

4           In the instant case, plaintiff complains that the parole board retroactively applied NRS

5    213.10885 in a way that altered his sentence. As stated earlier in this order, the parole board has no

6    power to alter petitioner's sentence. Petitioner's sentence is life with the possibility of parole after

7    10 years had been served. (Exhibit 25, at p. 6; Exhibit 69).

8           NRS 213.10885 does not change the legal consequence of petitioner's acts completed before

9    the effective date of the statute. Whether NRS 213.10885 is invoked or not, petitioner's sentence

10   remains life with the possibility of parole after 10 years had been served. Unlike the case in *Himes*

11   *v. Thompson*, 336 F.3d 848 (9th Cir. 2003), parole eligibility does not affect the length of a life prison

12   term. This is because under Nevada law, petitioner is not entitled to parole on a life sentence.

13   Therefore, NRS 213.10885 could not have altered petitioner's sentence and there was no retroactive

14   application.

15                                **2. Detrimental Application**

16          Assuming, *arguendo*, that NRS 213.10885 was retroactively applied, the court must

17   determine whether the statute "produces a sufficient risk of increasing the measure of punishment

18   attached to the covered crimes." *Weaver*, 450 U.S. at 29.

19          In the instant case, petitioner was convicted in 1993. By the terms of his sentence, he was not

20   eligible for parole until 2003. The statute, NRS 213.10987, was first passed in 1989, and was

21   amended in 1995 and again in 1997 when it was re-numbered NRS 213.10885. Petitioner claims

22   that the parole board applied the 1997 version (NRS 213.10885) to him and that the parole board

23   should have applied the pre-1997 version (NRS 213.10987) to him. Petitioner claims that in

24   invoking NRS 213.10885 to him, the parole board applied an erroneous crime severity level to him.

25          This Court discerns no detrimental application of the statute. The Nevada Supreme Court

26   determined that the parole board applied the correct crime severity level to petitioner. (Exhibit 66, at

27   pp. 2-4). The Nevada courts' factual findings are entitled to a presumption of correctness. 28 U.S.C.

28   § 2254(e)(1). Petitioner has not rebutted the Nevada Supreme Court's factual finding by clear and

                                             12

1   convincing evidence.  Petitioner's claim that the crime severity level was incorrect was based on his

2   incorrect assumption that his sentence was life with the possibility of parole after 5 years – rather

3   than his actual sentence of life with the possibility of parole after a minimum of 10 years had been

4   served.  Petitioner has not alleged any particular detrimental application of NRS 213.10885, and the

5   crime severity level applied by the parole board was correct.

6        Moreover, the statute does not have a detrimental application because petitioner's sentence

7   remains a life sentence.  The statute has no effect on when petitioner is eligible for parole.  To the

8   extent that the statute has an effect on whether or not an individual who is eligible for parole is

9   actually granted parole, the statute has prospective effect only.  Petitioner did not have an entitlement

10   to parole under Nevada law in any circumstances, thus the statute cannot be said to have a

11   detrimental application.  Petitioner has not shown, and indeed could not show, that he necessarily

12   would have been granted parole but for the passage of the new statutes (NRS 213.10987 and NRS

13   213.10885).

14        Finally, although NRS 213.10885 codified factors to be considered in making a parole

15   decision, the parole board's discretion remains the same.  Petitioner has not shown that the

16   codification of factors affected his suitability for parole.  The factors are only guidelines.  The 1995

17   statute provides that the parole board's considerations are "without limitation" to the factors

18   identified therein.  The 1997 statute provides that the factors "are not limited to" those codified in

19   the statute.  The parole board was free to consider any and all factors in petitioner's case, including

20   those codified in the statute.

21        The current parole regulations of which petitioner complains do not violate the Ex Post Facto

22   Clause.  The codification does not create a substantial risk of increasing petitioner's incarceration.  If

23   anything, the alterations create an attenuated or speculative risk of increasing petitioner's

24   incarceration.  *Morales*, 514 U.S. at 510.  The factors considered in 1988 and today remain the same

25   in that, under both, the parole board considers the inmate's prior criminal history and the crime's

26   impact on the victim.  There is no violation of the Ex Post Facto Clause in the parole board's use of

27   current guidelines in considering whether an inmate is eligible for parole.

28        The state district court properly applied the 1977 version of NRS 200.366 as it existed in

13

1   1988 at the time Dunham committed his crimes.  The parole board's actions in altering the crime

2   severity level did not reflect the subsequent versions of NRS 200.266.  There was no violation of

3   petitioner's due process rights or the Ex Post Facto Clause, as the sentence petitioner received

4   existed at the time he committed his crime.

5        In summary, the state court's findings regarding factual issues are presumed to be correct,

6   and petitioner had the burden of rebutting the presumption of correctness by clear and convincing

7   evidence.  28 U.S.C. § 2254(e)(1).  Petitioner has not made any showing to rebut the correctness of

8   the state court's factual findings as to any claim in the petition.  Petitioner has not shown that the

9   Nevada Supreme Court's rulings were contrary to, or involved an unreasonable application of,

10   clearly established federal law, as determined by the United States Supreme Court, or that the

11   decisions were based on an unreasonable determination of facts in light of the evidence presented at

12   the state court proceedings.  28 U.S.C. § 2254(d).  The Court will deny habeas relief with respect to

13   Ground Two and with respect to the petition in its entirety.

14   **V.**      **Certificate of Appealability**

15        In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

16   U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

17   (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

18   petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

19   certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

20   (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

21   assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In

22   order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

23   debatable among jurists of reason; that a court could resolve the issues differently; or that the

24   questions are adequate to deserve encouragement to proceed further.  *Id.*

25        This Court has considered the issues raised by petitioner, with respect to whether they satisfy

26   the standard for issuance of a certificate of appealability, and determines that none meet that

27   standard.  The Court will therefore deny petitioner a certificate of appealability.

28   ///

1  **VI.**     **Conclusion**

2        **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**

3  **IN ITS ENTIRETY.**

4        **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

5  **ACCORDINGLY.**

6        **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

7  **APPEALABILITY.**

8        DATED this 4th day of March, 2008.

9

10

11                                                    _____

12                                                    LARRY R. HICKS
                                                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28